UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| In the Matter of the Search of:<br><br>Specialty Fulfillment Center<br>(dba AC Fillers)<br>3 17th Ave. S., Nampa, ID | Case No. 1:17-mc-09979-CWD<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

Nordic Clinical, Inc. filed a motion under Fed. R. Crim. P. 41(g) for return of property seized by the Government at the premises of Specialty Fulfillment Center, located at 3 17th Avenue South, Nampa, Idaho, on September 26, 2017, pursuant to a search warrant. Nordic contends some of the property seized was not within the scope of the search warrant, and is not contraband. Nordic alleges it will incur irreparable business losses if the property is not returned for distribution to its customers.

The Court conducted a hearing on the motion on December 11, 2017, at which the parties appeared and provided oral argument. During the hearing, the Court requested

supplementation of the record, and the parties filed their respective declarations and responses pursuant to the Court's order. The matter is now ripe for consideration. After carefully reviewing the parties' submissions and the record before the Court,[1] the Court will deny the motion as explained below.

## FACTS

The Government applied for a search warrant on September 25, 2017, in connection with an ongoing criminal investigation being conducted for violations of 18 U.S.C. § 371—conspiracy to commit offense or defraud the United States; 21 U.S.C. § 331(a), (c), and (d)—introduction or delivery for introduction into interstate commerce of any adulterated or misbranded drug or device; and other violations of the Food, Drug and Cosmetics Act. The search warrant was executed at the premises of Specialty Fulfillment Center where several items containing products and packaging materials were seized.

---

[1] All parties have consented to the jurisdiction of a United States Magistrate Judge to enter final orders in this matter. *See Williams v. King*, 875 F.3d 500 (9th Cir. 2017) (requiring consent of all named parties); *U.S. v. Comprehensive Drug Testing, Inc.*, 513 F.3d 1085 (9th Cir. 2008), (*opinion revised and superseded by U.S. v. Comprehensive Drug Testing, Inc.* 621 F.3d 1162 (9th Cir. 2010) (magistrate judge issued report and recommendation regarding Rule 41 motion absent consent of the parties).

On or about October 4, 2016, affiant EF,[2] a special agent with the United States FDA's Office of Criminal Investigation, began an investigation of the Specialty Fulfillment Center in Nampa. EF received information from a medical professional that Specialty Fulfillment was distributing products to customers that included injectable botulinum toxin and dermal fillers, as well as dietary supplements labeled as intended to mitigate or relieve the symptoms of arthritis and bone and joint pain, to block collagen breakdown in cartilage and connective tissues, and suppress inflammation that underlines pain. EF testified the pain products were unapproved new drugs under the FDCA, because of their labeling. Additionally, EF discovered topical creams were being marketed as products intended to relieve arthritis and joint pain, with a "unique transdermal delivery" via a "cetylated fatty acid complex," which made the product an unapproved new drug under the FDCA.

EF provided detailed information about the pain relief products Specialty Fulfillment Center was shipping from its Nampa, Idaho warehouse on behalf of Nordic. EF indicated that, on September 8, 2017, he was made aware of an FDA investigation concerning the sale and distribution of Nordic's products, labeled as dietary supplements and/or topical creams. Two such products were identified by name as Neurocet and

---

[2] The search warrant and the supporting affidavit remain under seal in Case No. 1:17-mj-09885-CWD, as the investigation remains ongoing. *See* L. Crim. R. 49.1. Nordic did not move to unseal the affidavit filed in support of the search warrant. *See In re Search of S & S Custom Cycle Shop*, 372 F. Supp. 2d 1048, 1051 (S.D. Ohio 2003) ("Absent the existence of a criminal action, an individual simply has no basis for bringing a motion to unseal an affidavit under the Criminal Rules."); *In Re Matter of EyeCare Physicians of Am.*, 100 F.3d 514, 517 (7th Cir. 1996) (upholding magistrate judge's denial of a motion to unseal the warrant affidavits in the context of a Rule 41(g) motion, noting one reason would be to protect the identity of informants or others involved in the investigation).

ActaFLEX4. EF mentioned a third product, BloodBoost, was being distributed on behalf of Nordic as well. On May 17, 2017, an undercover agent received a package containing BloodBoost, ActaFLEX4 cream, and Neurocet. The flyer accompanying the order listed an address for Nordic at 3 17th Avenue South, Nampa, Idaho – Specialty Fulfillment Center's address (and the same premises the Government sought to search).

Attachment B to the application and to the search warrant indicated the property to be seized included:

> Evidence, instrumentalities and records relating to violations of 21 U.S.C. § 331 and 18 U.S.C. § 371; involving the Specialty Fulfillment Center and occurring after November 1, 2016, including:
> a.  The following products:
> 1. Any adulterated and/or Misbranded medical devices labeled as "Acquafiller" and "Nordic Clinical " dermal fillers, *as well as any other misbranded and/or adulterated medical devices*;
> 2. *All unapproved new drugs, including but not limited to* products labeled as botulinum toxin or similar, intended for injection into humans;
> b.  All records and information….

(Ex. A, Dkt. No. 4-3, p. 6-10) (emphasis added).

During the execution of the warrant, law enforcement officers seized, among other items, approximately 3500 bottles of various products labeled as "dietary supplements" and approximately 2800 packages of products labeled as "Actaflex" pain creams. *Id*. at p. 4-6. It is these products, the labeling for various products, and two folders labeled "Nordic" that are the subject of Nordic's motion. (Dkt. 4-1, p. 2-3.)

The specific items Nordic identified from the Inventory of Evidence for which it demands return are:

**MEMORANDUM DECISION AND ORDER - 4**

- Item #1 – 36 Actaflex 4x pain relief cream OTC
- Item #2 – 6 bottles of Neuroblock Technology, Neurocet, 30 capsules pain relief
- Item #3 – 85 bottles of Neuroblock Technology, Neurocet, 30 capsules pain relief
- Item #4 – 62 bottles of Neuroblock Technology, Neurocet, 30 capsules pain relief
- Item #6 – Neuroblock Technology, Neurocet, 30 capsules labels
- Item #9 – Insert Labels KS Nordic VZ
- Item #10 – Inserts Labeled "Actaflex – TY"
- Item #11 – Neurocet Kitted Inserts
- Item #13 – Inserts labeled "Neuro-TY"
- Item #14 – Brain NRG Kitted Inserts
- Item #15 – GSH-3 Kitted Inserts
- Item #16 – Medical Insert labeled "No Blood-P"
- Item #17 – Medical Insert labeled "Neuro-P"
- Item #28 – Flyers De Se silva – Nurdic
- Item #29 – 2 folders Nordic
- Item #31 – 1949 Total Bottles of blood boost
- Item #32 – 1544 bottles of Neuroblock Technology, Neurocet, 30 capsules labels
- Item #34 – 2799 Actaflex Pain Cream 20 oz.
- Item #35 – Receiving Invoices for Nordic Clinical

(Dkt. No. 17.)

Per the Court's request, the Government identified the following items seized during the execution of the search warrant with expiration dates that were either expiring imminently, or close to expiring:[3]

| Item No. | Inventory of Evidence Description | Lot No. | Expiration | Exhibit No. |
|---|---|---|---|---|
| 1 | Approx. 2751 Actaflex4x 2oz. tubes, NDC 65643-406 on label | 5723 | 7/15/2018 | 1 |
| 2 | 6 bottles Neuroblock Technology, Neurocet, 30 capsules (some of which have labels partially removed or overlapping labels) | | | 4 |
| 3 | 1 box, approx. 85 bottles Neuroblock Technology, Neurocet, 30 capsules (some of which have labels removed/scraped off or overlapping labels) | 0491F6 | 07/2018 | 5 |

---

[3] The Government represented that this is not a comprehensive list of items seized or items that are the subject of Nordic's motion. (Dkt. No. 19.)

**MEMORANDUM DECISION AND ORDER - 5**

| 4 | Approx. 62 bottles Neuroblock Technology, Neurocet, 30 capsules (some of which appear to have overlapping labels) | 0491F6 | 07/2018 | 6 |
|---|---|---|---|---|
| 31 | 5 boxes, approx. 1949 bottles Blood Boost, 60 capsules | 0484D7 | 05/2019 | 7 |
| 32 | 3 boxes, approx.1544 bottles Neuroblock Technology, Neurocet, 30 capsules | 0356A7 | 07/2018 | 8 |
| 34 | 37 boxes, Actaflex4x Pain Cream: | | | |
| | 33 boxes ActaFlex4x 2oz. tubes, NDC 65643-406 on label | 5723 | 7/15/2018 | 2 |
| | 4 boxes ActaFlex4x 3.4oz. tubes, no NDC number on label, mixed lot numbers, as follows: | | | |
| | Approx. 143 ActaFlex4x 3.4oz. tubes | 5257 | 10/2017 | 3 |
| | Approx. 15 ActaFlex4x 3.4oz. tubes | 5258 | 10/2017 | 3 |
| | Approx. 165 ActaFlex4x 3.4oz. tubes | 5259 | 10/2017 | 3 |

According to Nordic, the products seized (Neurocet, Blood Boost, GSH-3,[4] and ActaFLEX4x) were manufactured by Vitaquest International, LLC ("Vitaquest"), located in Fairfield, New Jersey. Vitaquest promotes itself as: "a fully compliant GMP manufacturing and packaging facility. We are duly licensed and are regularly inspected for Good Manufacturing Practices (GMP) by State and Federal health authorities." Vitaquest's Certificates of Analysis for the GSH-3, NO Blood Boost, and Neurocet indicate that the products were shipped to Nordic Clinical. The ActaFLEX4x product was ordered by Nordic through TriPharma, LLC, located in Laguna Beach, California. The product was manufactured by LifeTech Resources, LLC, which is a registered drug establishment, FDA Establishment No. 3003003565.

---

[4] The Government represented it did not seize any product labeled GSH-3. Rather, it seized kitted inserts for that product.

Nordic contends its contract with Specialty Fulfillment Center ensures title to, or ownership of, the products in Specialty Fulfillment's warehouse does not pass from Nordic to Specialty Fulfillment. Decl. of Lustigman, ¶ 17, Ex. I. (Dkt. 18-9). It appears the Specialty Fulfilment Center handles inventory management, order processing, and distribution of products on Nordic's behalf. *Id.* Customers wishing to purchase Nordic's products may order them on-line at Amazon.com, where the products are offered by Nordic. Decl. of Lustigman, ¶ 18, Ex. J. (Dkt. 18.)

## DISCUSSION

**1.      Applicable Standard Under Rule 41**

Under Federal Rule of Criminal Procedure 41(g), "[a] person aggrieved by an unlawful search and seizure of property or by the deprivation of property may move for the property's return." Rule 41(g) directs the Court to receive evidence on any factual issue necessary to decide the motion. If the Court grants the motion, the government must return the property to the movant, but the Court "may impose reasonable conditions to protect access to the property and its use in later proceedings."

When there are no criminal proceedings pending against the movant, Rule 41(g) motions are treated as civil proceedings invoking the court's equitable powers. *Ramsden v. U.S.*, 2 F.3d 322, 324 (9th Cir. 1993) (A Rule 41(g) motion is "treated as [a] civil equitable proceeding[]".).[5] The *Ramsden* court articulated four factors the Court must

---

[5] At the time *Ramsden* was decided, Rule 41(e) governed return of property seized during a search warrant. *Ramsden*, 2 F.3d 322, n. 1.

consider in determining whether to entertain a Rule 41(g) motion made prior to initiation of criminal proceedings:

> (1) whether the Government displayed a callous disregard for the constitutional rights of the movant;
> (2) whether the movant has an individual interest in and need for the property he wants returned;
> (3) whether the movant would be irreparably injured by denying return of the property; and
> (4) whether the movant has an adequate remedy at law for the redress of his grievance.

*Id*. at 325. No single factor is determinative. "If the 'balance of equities tilts in favor of reaching the merits' of the Rule 41(g) motion, the district court should exercise its equitable jurisdiction to entertain the motion." *United States v. Kama*, 394 F.3d 1236, 1238 (9th Cir. 2005) (quoting *Ramsden*, 2 F.3d at 326).

If the Court reaches the merits of "a motion for return of property [that] is made before an indictment is filed (but a criminal investigation is pending), the movant bears the burden of proving both that the seizure was illegal and that he or she is entitled to lawful possession of the property." *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987). A return of property should follow only a particularly egregious violation; "[t]he issue is whether the Government's conduct was sufficiently reprehensible…to warrant this sanction." *Ramsden*, 2 F.3d at 327.

2. **Application of the *Ramsden* Factors**

The Court first will consider the *Ramsden* factors to determine if they weigh in favor of invoking equitable jurisdiction. *Ramsden*, 2 F.3d 322 (factors must be considered before district court can reach merits of pre-indictment Rule 41(e) (now (g)) motion).[6]

A. *Whether the Government Displayed a Callous Disregard for the Constitutional Rights of The Movant*

Nordic argues the property was improperly seized because it did not fall within the parameters of the warrant, citing paragraph (a)(1) and (2) in Attachment B. *See* p. 4, *supra*. Nordic contends the listing of Nordic as a brand of dermal fillers did not authorize the seizure of Nordic's products that were not dermal fillers. Further, the "unapproved new drugs" were described as including, but not limited to, products labeled as botulinum toxin or similar. Nordic argues its products are not dermal fillers or botulinum toxin, and thus not covered by the warrant.

A callous disregard for Nordic's constitutional rights is a higher threshold than a mere violation of its constitutional rights. *Burum*, 2014 WL 12596719, at *4. For instance, if the Government sought to comply with the search warrant in good faith, such

---

[6] This Court recently had occasion to consider a motion under Rule 41 in *United States v. Sperow*, No. 1:06-cr-126-BLW, 2017 WL 1073347 (D. Idaho Mar. 20, 2017). Because the motion was raised post-conviction, the standard for review was different. The Court explained that, after a criminal proceeding is over, there is a presumption in favor of the person from whom the property was seized that he has a right to its return. 2017 WL 1073347 at *4. The government can rebut the presumption by showing it has a legitimate reason for retaining the property and that retention of the property is reasonable taking into consideration all facts and circumstances. *Id.* In such cases, the legality of the search and seizure is no longer an issue and, even if the seizure was lawful, the Government must justify its continued possession of the property by demonstrating that it is contraband or subject to forfeiture. *United States v. Martinson*, 809 F.2d 1364, 1369 (9th Cir. 1987). *See also United States v. Van Cauwenberghe*, 934 F.2d 1048, 1061 (9th Cir. Cir. 1991) (considering post-conviction Rule 41 motion).

conduct would not constitute a "callous disregard" for a movant's constitutional rights. *See Cox v. United States*, No. CV 07-1200 SMM, 2008 WL 477877, at * 4 (D. Ariz. Feb. 19, 2008) ("[A] callous disregard for Petitioner's constitutional rights would not have been established unless the agents deliberately disregarded the requirements of Fed. R. Crim. P. 41 or the plaintiff was prejudiced.") (citing *United States v. Mann*, 389 F. 3d 869, 874-76 (9th Cir. 2004)); *United States v. Gantt*, 194 F. 3d 987, 994-95 (9th Cir. 1999)).

Here, the undersigned Magistrate Judge had two occasions to review the affidavit submitted in support of the application for the search warrant, both prospectively and upon consideration of Nordic's motion. The Affidavit specifically identifies the products to be seized (Neurocet, ActaFLEX4, and BloodBoost), as well as the labeling and other records relating to those products. The affiant, EF, explained the basis for his belief that the products were "unapproved new drugs". The Affidavit provided the particularized information necessary for the Magistrate Judge to find probable cause for the issuance of the warrant and for seizing the property that was in fact seized. Probable cause was found to seize not only the botulinum products, but also the three analgesic products identified as being sold via a website operated by Nordic and distributed by Nordic from a physical address matching the address of Specialty Fulfillment. The Government was therefore authorized to seize the Nordic products and related records and information, as they fell within the scope of the search warrant.

Attachment B, when read together with the Affidavit, described "any other misbranded and/or adulterated medical devices," as well as "all unapproved new drugs."

Although Exhibit B included botulinum toxin, the reference was not limited to such products. Probable cause was found to search the premises of Specialty Fulfillment Center and to seize the products referenced in the Affidavit that fell within the scope of Exhibit B, including "other" misbranded medical devices and "all unapproved new drugs," as stated in Exhibit B. The Affidavit specifically identified the association of Nordic with these products, and they appear to be among the products seized.

The Government followed proper procedure, obtained a warrant, and executed the warrant approved by the Magistrate Judge. In contrast, the court in *Ramsden* found against the government because no warrant was obtained. 2 F.3d at 325. Clearly, the conduct of the Government here does not rise to the level of callous disregard for Nordic's Fourth Amendment rights. Therefore, the Court needs not reach the argument raised by the Government that the products seized are contraband and therefore should not be returned. Such goes to the merits of the matter or would be the subject of a post-conviction Rule 41 motion. It will be up to the Government to prove the products' illegality in the event criminal charges are filed. Here, upon review of the search warrant affidavit, the Court need only have found probable cause for the search and seizure of items at Specialty Fulfillment Center that may be evidence of a crime, contraband, or property designed for use, intended for use, or used in committing a crime. *See* Fed. Crim. Rule 41(c).

Under these circumstances, the Court cannot find that the Government acted with "callous disregard" for Nordic's rights. Accordingly, the first factor of the *Ramsden*

analysis weighs against the Court's exercise of equitable jurisdiction over the Rule 41(g) motion.

      **B.**    *Whether The Movant Has an Individual Interest In And Need For The Property He Wants Returned*

Nordic indicates it has an individual interest in and need for the property because the dietary supplements and topical creams are essential to its business. Nordic wants the saleable products back so it can sell them. The Government argues the products are contraband and non-merchantable, and therefore, Nordic has no right to sell them. The Government introduced affidavits from the FDA medical advisor and a pharmacist working with the Drug Registration and Listing System at the FDA Center for Drug Evaluation and Research, Office of Compliance, indicating that Neurocet, BloodBoost, and ActaFLEX4X are unapproved new drugs and misbranded drugs, which are not saleable. Nordic's response to these affidavits was an affidavit of its own, claiming the product ingredients are approved for sale. Nordic introduced also supplemental materials demonstrating an ownership interest in the products and their legal manufacture by others.

Although the parties argued about whether marketing and sale of the products is lawful, the Court finds it inappropriate to answer that question within the context of this pre-indictment motion. *United States v. Comprehensive Drug Testing, Inc.*, 621 F.3d 1162, 1173 (9th Cir. 2010) ("Under *Ramsden*, the district court is required to balance four discretionary factors to determine whether to allow the government to retain the property, order it returned or (as happened in *Ramsden*) craft a compromise solution…"); s*ee also*

note 6, *supra*. Instead, the Court must confine its analysis to Nordic's individual interest in and the professed need for the property it wants returned.

In cases where a court found that the return of property prior to an indictment was appropriate, the property involved documents or computer hardware necessary for the movant to run his or her business. For example, in *Ramsden*, the court found the property seized included documents necessary for the movant to run his business. 2 F.3d at 325.[7] The court allowed the government to retain the originals, and provide copies to the claimant. *Id.* Similarly, in *In re Singh*, 892 F.Supp.1 (U.S. D.C. 1995), the government seized tax return documents and other business documents from a tax preparer. In considering a pre-indictment Rule 41 motion, the court found the movant was entitled to the return of copies of the documents, such that the movant could continue to run his business. *In re Singh*, 892 F.Supp. at 2. The government was permitted to retain the original documents. *Id.* In *Drug Testing*, the interest was the baseball players' privacy interests in their drug test results and the specimens seized. 621 F.3d at 1173 (removal of the urine samples and documents constituted a breach of the Major League Baseball Players Association's negotiated agreement for confidentiality, violated its members' privacy interests, and interfered with the operation of its business).

Here, no similar interest is implicated other than Nordic's economic interest in selling the seized products it claims were lawfully manufactured by others and owned

---

[7] However, it does not appear the documents seized in *Ramsden* were seized for anything other than the information contained within the documents, and the court gave scant analysis of this factor. The more troubling factor was that the search and seizure was effected without a warrant.

and marketed by Nordic. But, because the investigation is ongoing, the lawfulness of the products themselves, or their continued merchantability, is not for the Court to decide. While the Government has not filed formal charges, the Government indicated the products are being retained as part of its ongoing criminal investigation. Many of the ActaFLEX products seized have an expiration date that either has already passed, or will pass soon, preventing their sale in any event. The Government should be permitted a reasonable amount of time to pursue its investigation and determine whether to bring formal charges. This factor therefore weighs against exercising equitable jurisdiction.

    **C.**    *Whether The Movant Would Be Irreparably Injured by Denying Return of The Property*

Nordic contends it would be irreparably injured by denying return of its property because the products have a limited shelf life of two years, and their value is similarly limited. If Nordic cannot obtain return of the items, Nordic claims it will suffer approximately $259,000 in lost sales. Nordic does not substantiate this dollar figure.

The Government argues that, because the property at issue cannot be lawfully sold and is therefore not merchantable, there is no irreparable injury. Nordic, it contends, can still function as a going concern, as its computers, buildings, and the like were not seized. *See Ramsden*, 2 F.3d at 325 (rejecting movant's contention that without the return of the original documents (as opposed to copies), he would be unable to run his business); *see also In re 6455 South Yosemite*, 897 F.2d 1549, 1557 (10th Cir. 1990) (noting that "if appellant ... is to establish irreparable injury, it must be because of an ongoing business need to recover original copies of the documents seized....").

Nordic essentially contends it will lose profits based upon its inability to sell the products seized. However, Nordic can still function as a going concern. Put another way, there is no showing that the alleged harm—the inability to sell the products—is irreparable to Nordic's business as a whole.[8] This factor weighs against exercising equitable jurisdiction.

### D. *Whether the Movant Has an Adequate Remedy at Law for the Redress of its Grievance*

Nordic contends it has no adequate remedy at law, as it has not been indicted, and has no other opportunity to challenge the seizure due to the limited shelf life of the products. The Government counters that the motion is premature, because the Government has an evidentiary need to retain the property, its criminal investigation is ongoing, and no criminal charges have been filed yet. The Government asserts Nordic can challenge the seizure of the products and documents if an indictment is returned, and request return of the products at a later date. The Government argues the limited shelf life of the products is not a consideration here, as that pertains only to Nordic's immediate economic concerns.

Here, it is unknown whether the Government will prosecute any person or entity involved in its investigation, including Nordic. Thus, the Court cannot determine whether

---

[8] This matter is no different than any other matter where products or goods that can allegedly be lawfully sold are seized during an investigation. Here, simply because the nature of the products as dietary supplements or unapproved new drugs is unsettled should make no difference. The products were seized during a criminal investigation into alleged unlawful activity pursuant to the Food, Drug and Cosmetics Act. The balance of equities does not tip in favor of the purported owner of the seized products to continue their marketing and sale simply because the owner disputes the ultimate issue of their illegality.

or when Nordic, or anyone else who may be implicated, will have an opportunity to challenge the seizure of the items at issue. What is clear is that there remains an ongoing criminal investigation involving Specialty Fulfillment Center, Nordic, and potentially others, and charges may still be forthcoming. If an indictment or other criminal proceedings ensue, Nordic (or Specialty Fulfillment) may challenge the seizure of the products and documents in those criminal proceedings.

Because Nordic may have an opportunity to challenge the seizure in future criminal proceedings, Nordic has not sufficiently shown an inadequate remedy at law. *See Zubkis v. Lange*, 966 F. Supp. 985, 987 (S.D. Cal. 1997), *aff'd sub nom. Zubkis v. United States*, 133 F.3d 931 (9th Cir. 1998) (finding that because an indictment may still issue, plaintiff could challenge the seizure in the criminal proceedings and therefore had an adequate remedy at law).

## CONCLUSION

The Court finds Nordic has not sufficiently demonstrated the prerequisites for the Court's exercise of equitable jurisdiction. The Court therefore declines to exercise equitable jurisdiction, and accordingly will neither reach the merits of the request to return the property, or consider conditions to impose to protect the Government's access to the property upon its return.

# ORDER

**NOW THEREFORE IT IS HEREBY ORDERED:**

1)  Petitioner Nordic Clinical, Inc.'s Motion for Return of Property (Dkt. 1) is

    **DENIED**.

DATED: February 8, 2018

_____

Honorable Candy W. Dale
United States Magistrate Judge